Good morning, may it please the Court. My name is Benjamin Hughes, pro bono counsel for Ms. Kaibin Mei Lin, a young girl from the rural Fujian province who was trafficked to Hong Kong for the purpose of prostitution at age 15. Counsel, before you proceed, we would like to thank you for taking this case pro bono. Thank you. It's my pleasure, Your Honor. As you know, Mrs. Lin has asked this Court to find that young women who escape forced prostitution in China constitute a particular social group for the purposes of asylum. She has also asked this Court to find that the evidence in this case compels the conclusion that Mrs. Lin has demonstrated a well-founded fear of future persecution on account of her membership in this particular social group. The Government has not addressed these issues, but has argued instead that this case should be remanded on the Supreme Court's decision in INS v. Ventura, as well as this Court's decision in Castillo v. INS and other cases. Mrs. Lin's position is that this case does not need to be remanded. First, the question of what constitutes a particular social group is a purely legal question subject to de novo review by this Court. This Court reviews the factual findings of the BIA under the substantial evidence standard upholding the BIA unless the evidence compels a contrary conclusion, as it does in this case. Even if this case is to be remanded to the BIA to consider certain factual issues, this Court should first resolve the legal issues before it to determine the correct legal standards the BIA should apply. So we've had a lot of problems with what is a social standard. It may be a little different from those that composed the language thought it would ever get to, and it isn't an easy question now that we've complicated the issue. But I'm just wondering whether we even get to that. In this case, she was never a prostitute. She was — I'm not sure — I'm not sure there's evidence even that she was forced into prostitution. The only thing she knows was she was in Hong Kong, she thought she was working at a restaurant, and a woman says, no, you're in a brothel, and then she leaves. There's — it seems to me the evidence is very slim on this record that she was — would even be in that social group. Well, fortunately, Your Honor, she was not forced into prostitution. She escaped before she was forced to do any — But you're assuming she's in a forced prostitution context. And I'm just raising the question, is the record really sufficient here that she was in that context when she herself cannot testify to it? All we have is some woman said, no, you're not in a restaurant, you're in a brothel, and you ought to get out of here. Is that sufficient to show she's in — assuming the social context group, is that sufficient to show she's in it? Well, there's been no dispute of that issue, Your Honor. And she was dropped off in a room and left for several hours and told by, you know, an older — presumably an older prostitute that she was in a brothel. No, we don't know the older woman's a prostitute. That's not in the record. What is that she says it's in a brothel, the older woman? Yeah. In the record, the older woman says that she is a prostitute and that this is a brothel. That's correct, Your Honor. We have no independent verification from an outside source that it was actually a brothel. And what evidence is there in the record that if she went back, that this Mr. Wang would be able to find her no matter where she went in China? And that the — that the Chinese government is allowing Mr. Wang to enforce prostitutes? What evidence of that is there in the record? Well, her family has received explicit threats from the same person who brought her to Hong Kong, that if she returns, he would return her to Hong Kong and to the brothel. Your second question goes to the issue of relocation in China. And that is a statutory matter. Under 8 CFR 1208.13b3, relocation has to be reasonable under the circumstances. And I think it would be unreasonable — among the factors that you consider under that statute are the age, familial ties, economic hardship, et cetera, associated with relocation. And I think it would be unreasonable for her to relocate alone at her age and with her resources. And also — At her age? Isn't she 18 now? She's 18 now, Your Honor. Yes. And we let people vote and go to war and get killed at 18. That's true, Your Honor. But, you know, at the time that this case was brought, she was 16 and — I understand. But when she goes back, she's going to be 18 and perhaps 19. Why is it more unreasonable to think — to think that she could not live alone in China, but she could stay alone in the United States? Actually, Your Honor, she's staying with family members now in Connecticut. So I think it would be unreasonable for her to stay alone in the United States. Does she have family members in China? She does. Her parents are — Does she have anybody else besides her parents? I'm not aware of any other family members other than her parents. I assume that there are family members, but I don't know of them. But, counsel, isn't your argument inconsistent with the fact that she relocated to Hong Kong alone? That she relocated to Hong Kong? She went to Hong Kong alone. She was in Hong Kong for one day and fled. But the plan was for her to go there to work. The plan was for her to go work in a restaurant. In a restaurant. So she was — at the beginning, she was relocating with the consent of her parents to Hong Kong alone. Right. So isn't that inconsistent with your hearing? Well, if I understand those arrangements, and this is outside the record, Your Honor, but there are — it's not uncommon for peasant women from rural areas of China to go to Hong Kong and live in the dormitory provided by their employer and work in the restaurant or whatever that the employer provides. This is outside the record, so this is my speculation. Right. But my point was that she was capable of living away from her parents on her own.  And as she is now in Connecticut also. So if the panel has no further questions, I'd like to address the remand. What evidence do we have that Mr. Wang is a member of the Black Society? Is this the letter from her mother? This is also based on, yes, the — first, the testimony of Ms. Lin, based on what she was told by the prostitute in the brothel. Did the prostitute use the words Black Society? In Chinese. And that's — I believe that's a general term for gangs that are referred to as Black Society in China. Okay. So this isn't a — is this a particular identifiable group, or is this sort of a generic reference to a gang? I believe it's a particular group, Your Honor. Okay. So she hears this phrase coming from one of the self-identified prostitutes in Hong Kong. Okay. Do we have any other evidence that Mr. Wang belongs to an organized group? Well, the fact that he brought her to China — to Hong Kong and dropped her off at a brothel would indicate that he's involved, at least in the activities that the State Department report confirms that these gangs are involved in, which is trafficking. That's a pretty big leap, isn't it? I mean, the fact that he's engaged in illegal or disreputable activities and members of Black Society are also engaged in disreputable activities won't allow an inference that he's, therefore, a member of the Black Society. Well, as the State Department report points out, this is an activity that's conducted by organized gangs in China, and I think it would be difficult for, you know, random individuals to engage in this kind of organized trafficking. Okay. One last question. What is it that she fears will happen to her if she goes back to China? She fears that she will either be punished by being beaten or killed or be returned to the brothel where she'll be repeatedly raped. By Mr. Wang? I'm sorry? By Mr. Wang? By Mr. Wang or other members. And that the government will look the other way and allow him to do that? Yeah. Does she have any fear from anybody else other than Mr. Wang? I'm sorry? Does she have any fear of anybody other than Mr. Wang? Mr. Wang and other members of the Black Society. Assuming that he's a member of the Black Society. Yes, Your Honor. And there is ample evidence that the local authorities in China and the police do turn a blind eye to these kind of activities. And, you know, with regard to her ability to see ---- What's the ample evidence of that? In the State Department report, Your Honor, it states that there are ---- No specific evidence in this case. You're talking about the State Department report, which also says they're trying to crack down, isn't it? It does say they're trying to crack down, Your Honor, but the conclusion of the report is that it's been ineffective and that there is still complicity by local officials. And I think the issue for Ms. Lin is that her only recourse really is to local officials and the police. She can't appeal directly to high government officials who may be quite sincere in their attempts to crack down, but these attempts have been ineffective. All right. Thank you, counsel. We'll give you one minute for rebuttal. Okay. Thank you, Your Honor. Good morning. May it please the Court. My name is Arthur Rabin with the Justice Department representing the Respondent in this case. The burden of proof in this case was on the Respondent entirely. That is, she had to prove not only that she was, one, she was persecuted, two, on account of a protected reason, three, by somebody that had the power to do that, and four, that she did not have the ability to relocate to escape that persecution. In this case, the board, when it looked at the decision of the immigration judge, it, although it discarded his adverse credibility finding, it did find three things. One is that she was not persecuted on account of a protected reason. In a conclusionary fashion, that's what the board said. Two, it stated, well, even if that moreover, it said, the Petitioner here failed to show that these Wang or members of black society had the power to persecute her. And three, that she was not able to relocate. So the Court can decide that, this case, on those reasons alone. Because the ---- Those are the reasons decided by the I.J. or the B.I.? By the board, Your Honor. By the board. Those are the three things the board said. But that's not what you've asked us to do. No, Your Honor. What we are really concerned with here is that if the board, or if the Court decides that the other two reasons are insufficient to deny the petition for review, that is to uphold, to affirm the board's decision, that the case should be, as far as the sole issue remaining, that is, was she persecuted on account of a protected reason, that is, her membership in a particular social group consisting of the defined group that she stated she supposedly belonged to, we are concerned that the board has never, ever made a decision on that issue. That is, it ---- But the board said she wasn't persecuted on account of a protected ground. That is a conclusory way of saying we deny it. However, the board should have done a lot more in this case. This was a novel social group issue that even the dissenting member of the board stated the board should have dealt with in a much more detailed decision. And we would agree with the dissenting member that this is the kind of issue that in Ventura, INS v. Ventura, the Supreme Court stated that it should be in the first instance decided by the board who has that special expertise granted to it by Congress to decide these kind of sensitive political issues. But the dissenting member of the board set out the issue. Isn't that sufficient for us to review in the context of looking at the entire administrative proceedings? We know what the issues are. We know what the board decided because we know what the board considered because the dissenting member of the board tells us. So isn't that sufficient for us to review? Well, Your Honor, yes. I would disagree. I would say that the dissenting member of the board only identified the issue. There is nothing particularized by either decision for the court to review. That is, pursuant to INS v. Ventura, I mean, the court – it should be – it would be appropriate for the board to decide this issue in the first instance, and I don't think it would be appropriate. What issue? It would be appropriate for the board to decide what issue? Okay. These are specific issues that we think should be decided by the board. Whether or not young women who have fled forced prostitution in China, which is a definition given by Petitioner's counsel, constitutes a particular social group. Two, whether she's a member, whether she falls into, as Judge Wallace said, into that particular definition. And then three, does she have a well-founded fear on account of that reason? And finally, is she unable or unwilling to reasonably relocate within China? But in the board's decision, they didn't reach those issues for a particular reason. The board, it seems to me, is saying regardless of whether or not she's in a social class, she hasn't proven it. The board indicated that there was a future – there's no future harm as a nexus to any protected ground. And it's talking about the power, ability, and inclination of those involved to harm her, et cetera. It seems to me what the board is ducking that issue of the class and saying regardless of that, there's no objective reason to fear returning to China. Isn't that what the board did? That's exactly – and that's why – And that's what's before us. If we disagree and say we want to know the – want to know about the social class, you're saying that has to go back. Yes, Your Honor. But if we affirm the board on this issue, then it wouldn't go back. Exactly, Your Honor. That is, those other two reasons are sufficient individually or cumulatively to deny the petition for review. But the position you've taken here today, counsel, is different than the position you took in your brief. Well, what we said – The brief asked for a – just for a flat remand to the board to decide the question. And today you come and say, well, we can affirm the board without having to remand on the basis of the three things that you cited to us that Judge Wallace has just repeated. Your Honor, that is the – I'm very confused as to what you want us – as to what the government wants us to do here. Well, Your Honor, the court has judicial review powers under INA 242 to review the board's decision. What the government's position in – as filed by Ms. Perry was that she was very concerned about the particular social group issue, and she did not want the court de novo reviewing that issue without the board's first instance review. What I'm pointing out is that, pursuant to the INA 242 powers of review, the court can also decide this issue regardless of the – that particular social group issue. There are two alternative reasons. You're suggesting that we could simply assume that if the board were to consider this, that the board would find that there is a class of persons out there, but she is simply not qualified or hasn't provided sufficient proof that she's a member of that class. Or if that class, so-called class, even is a particular social group. I also supplementally cited to the – to this Court the case of United States – I'm sorry, INA – Lopez v. Ashcroft, which is a case that stood for the proposition that even where the board has made a conclusory initial determination, it should still be remanded for fuller explanation where it's a significant issue of social impact, of a significant legal issue that should be decided by the board in the first instance. So if the Court does decide that the alternative grounds do not, in and of themselves, are sufficient to deny a petition for review in this case, then we believe under Ventura and Lopez that this case should be remanded. The issue, I suppose, is have you forfeited that first question. If you're – if you take the position that in your brief that we should just remand, have you forfeited the second argument that on the basis of the board opinion, we can deny the petition because even if there is a protected class, as indicated, there's a lack of nexus, which is the position taken by the majority on the board? It seems to me that I sort of agree with Judge Bybee that I'm not – I'm not sure about the government's position or the government can change its position this late date. Well, Your Honor, I – this Court has decided on numerous occasions on other grounds than those put forward by the government in these kinds of cases. What – simply what I'm pointing out is that under INA 242, the Court has an independent obligation to review the decision regardless of what the government says, even if the government did not breach this issue. Regardless of what the government says? Well, if this issue – Representing the government? Yes, Your Honor. What I'm saying is that if – I'm sorry, Your Honor. I'm just saying, Your Honor, that had the government forfeited its right to brief in this case, that is, we never submitted a brief, this Court would still have to review the issues raised by Petitioner's brief, including whether or not the board – the board's decision was erroneous in this case on all three grounds. So I guess my point is that even though we briefed only the sole issue here, we would the Court does have the power to reach the other two issues. Subject to the Court's questions, that concludes my argument. It appears there are none. One minute for rebuttal. Mr. Hughes, would you address the relief that the government has requested here? It's almost as though this is – this ought to be common ground. The government is requesting a remand to BIA. I assume that you wouldn't object to that. We wouldn't object to a remand, Your Honor, if the – you know, if this Court would decide the legal issues and – Well, if we decided the legal issues, there wouldn't be any need for – to send it back to the board, would there? The government's requesting a Ventura – a Ventura remand to BIA to decide in the first instance whether young women forced into prostitution or returned to China constitute a social class that is entitled to asylum. Well, I would argue, Your Honor, that that – that that was in the brief to the BIA and the BIA did rule on that issue, and that it – So you disagree with the government that this issue needs to be sent back to the – to the board? I would argue that if the – if this is to be sent back to the BIA, that the scope of the remand should be narrow, such that they are applying the – their analysis in accordance with the legal standards set out by this Court. And that is a decision by this Court as to whether women who escape forced prostitution in China are members of a particular social group as a matter of law. You want us to decide that – decide that issue, not the board? Correct, Your Honor. Well, we've been spanked before by the Supreme Court for doing precisely that. We've – we've been told that the board gets the first shot at these issues. Do you have some case that will protect us from Supreme Court procurium reversals on this case? Well, even under Ventura, Your Honor, the remand was limited to issues that the BIA had not considered in the first instance at all. In this case, they – they did consider the issues before them in Mrs. Lin's brief to the BIA. They considered it. The majority decided not to do it. Only the dissent wanted to go that direction. Correct. All right. Thank you, counsel. Thank you to both counsel. The case that's argued is submitted for decision by the Court, again, with our thanks to Mr. Hughes for his pro bono representation of the petitioner in this case. The next case on calendar for argument, Singh v. Ashcroft, has been submitted on the brief. The next case on calendar for argument is Kyle v. Ashcroft.
judges: Wallace, Rawlinson, Bybee